In the United States District Court
District of South Carolina
Florence Division

| | |
|---|---|
| Bobby Lee Tucker, Sr., ) | |
| ) | Case # 4:13-cv-1809-BHH |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | **Response to Motion to Dismiss** |
| Peerless Insurance ) | |
| Company, ) | |
| ) | |
| Defendant ) | |
| _____) | |

"We hold today that if an insured can demonstrate bad faith or unreasonable action by the insurer in processing a claim under their mutually binding insurance contract, he can recover consequential damages in a tort action. Actual damages are not limited by the contract." So held the Supreme Court in *Nichols v. State Farm Mut. Auto. Ins. Co.,* 279 S.C. 336, 340, 306 S.E.2d 616, 619 (1983).

Peerless Insurance Company's motion to dismiss raises four issues:

1. Does *Nichols* apply to uninsured motorist (UM) carriers?

2. What triggers the *Nichols* duty to act in good faith?

3. Did Tucker plausibly state a claim that Peerless acted unreasonably and in bad faith for refusing to pay Tucker his UM benefits?

4. May Tucker recover more than the contractual UM limits?

## Statement of the Case

On April 30, 2010, Donald Wilson saw a blue freightliner parked at a truck stop and watched as its driver turned on to I-95 South.[1] Wilson noticed that a block on the freightliner's flatbed "could be a problem" because it only had a single strap across the top of the block. Tucker's expert agreed that the strap would not hold the block in place as the freightliner got up to interstate speeds and maneuvered turns. *Tucker*, 413 S.C. at 395, 776 S.E.2d at 125.

Later that evening, Bobby Lee Tucker, Sr. was driving further down I-95 South when he hit something lying in the interstate. He lost control and crashed into a column in the median of the road supporting an overpass. *Id.* at 393-394, 776 S.E.2d at 124. The crash caused him to suffer serious and life-threatening injuries, substantial and continuing pain, ongoing loss of enjoyment of life, and permanent impairment and disfigurement. His medical bills from the crash totaled around $325,000. Motion to Dismiss, Ex. A at 7.

Anthony Bernardo, a motorist traveling behind Tucker, watched the crash unfold and signed an affidavit attesting to the truth and facts of the accident. Complaint, ¶ 4; *Tucker*, 413 S.C. at 393-394, 776 S.E.2d at 124.

---

[1] These facts are taken from the order entering judgment against the unknown motorist and from the Record on Appeal. *See Tucker v. Doe*, 413 S.C. 389, 776 S.E.2d 121 (Ct.App. 2015). Tucker agrees with Peerless that the Court may judicially notice such filings. Motion to Dismiss, p. 3 n. 2.

The tow truck operator called to the scene found a block near the crash scene. The block weighs around 650 pounds and was so heavy that the tow truck operator had to use a front-end loader to move it. *Id.* at 394-395, 776 S.E.2d at 124. An engineer with the SCDOT testified that "he could only assume" that a vehicle was involved in getting the block where it was found because the block weighed 650 pounds and was found in an area where pedestrians are not allowed. *Id.* at 395-396, 776 S.E.2d at 125.

Tucker identified the block that the tow truck operator found as what he hit. *Id.* at 394, 776 S.E.2d at 124. Skid marks, impact marks, and damage to the truck corroborated Tucker's testimony that he hit the block. The skid marks left the tow truck operator with no doubt that Tucker hit it. *Id.* at 394-395, 776 S.E.2d at 124-125.

Wilson testified that the block that Tucker testified he hit and the one that the tow truck operator found "looked just like" the one that he earlier saw on the flatbed. *Id.* at 395, 776 S.E.2d at 125.

At the time of the crash, Tucker had $100,000 in UM coverage from Peerless and $100,000 in UM coverage from another carrier. Complaint, ¶¶ 6-7. On May 14, 2010, Tucker brought a "John Doe" action against the unknown motorist and served the two UM carriers with process. They answered on Doe's behalf. Complaint, ¶¶ 5-8; *Tucker*, 413 S.C. at 396, 776 S.E.2d at 125.

3

After the parties exchanged written discovery and took depositions, the UM carriers moved for summary judgment on whether the Bernardo affidavit satisfies S.C. Code Ann. § 38-77-170(2). The trial court denied the motions in the year 2011, ruling that the affidavit satisfies *Gilliland v. Doe,* 357 S.C. 197, 592 S.E.2d 626 (2004). Complaint, ¶¶ 9-11; Exs. A-B.[2]

Tucker offered to settle the case after the carriers' summary-judgment motions were denied. Complaint, ¶¶ 12-14. The other UM carrier engaged in settlement talks and paid its policy limits. Complaint, ¶ 14. Peerless did not respond. Complaint, ¶¶ 15-16.

During the ensuing trial, Peerless told the jury that Tucker "suffered grievous, grievous injury . . . I mean, even in the Bible they don't talk about the kinds of injuries Mr. Tucker suffered." Ex. C. It did not rebut Wilson's testimony that the block he saw on the flatbed "looked just like" the one that Tucker testified he hit and that the tow truck operator found near the scene. And it did not offer any evidence on how the 650 pound block wound up where it was unless a vehicle got it there.

On April 15, 2013, the jury awarded Tucker $2,500,000 in actual damages

---

[2]The trial judge's orders on *Gilliland* are attached as Exs. A and B. *Gilliland* holds that § 38-77-170(2) is satisfied when the witness offers circumstantial evidence that supports the crash victim's testimony on causation. 357 S.C. at 202, 592 S.E.2d at 629.

4

and $2,500,000 in punitive damages. Complaint, ¶ 15. Tucker waited over a month after the jury returned its verdict before he sued Peerless for bad faith and breach of contract. Complaint, filed May 28, 2013.

This action was stayed during Peerless's post-trial motion and appeals in the UM action. On December 16, 2013, the trial court reduced the punitive damages award, affirmed the actual damages award, and entered judgment for Tucker for $3,000,000. *Tucker*, 413 S.C. at 397, 776 S.E.2d at 125-126. The Court of Appeals affirmed August 5, 2015, agreeing with the trial court that the Bernardo affidavit satisfied the *Gilliland* standard. *Tucker*, 413 S.C. 397-404, 776 S.E.2d at 126-129. The Court further recounted the evidence available to Peerless in evaluating Tucker's claim. *Id.* at 393-396, 405-409, 776 S.E.2d at 124-125, 130-132. Over a year later, the Supreme Court denied certiorari on October 20, 2016. *Id.* at 389, 776 S.E.2d at 121.

Peerless has still not tendered its policy limits. Its counsel states, upon information and belief, that it will tender Tucker his UM benefit sometime "in the near term." Motion to Dismiss, p. 2 n. 1.

## Argument

*Nichols* applies and was triggered in 2010 when Peerless became a party in Tucker's action against the at-fault motorist. From then on, Peerless had

5

every right to contest the claim—if it could do so in good faith. What it could not do was string Tucker out for years and years without a reasonable, good-faith basis. After all, the other UM carrier settled back in 2011 when it lost its motion for summary judgment. And that 650 pound block did not take legs and walk into I-95 South by itself.

Tucker plausibly states a claim for Peerless's bad faith refusal to pay the UM claim, with damages unencumbered by the policy limits. The motion to dismiss should be denied.

# I. *Nichols* applies.

Peerless wants this Court to be the first court to reject *Jefferson v. Allstate Ins. Co.,* 673 F.Supp. 1401 (D.S.C. 1987).[3] In *Jefferson,* Judge G. Ross Anderson predicted that *Nichols* applies to UM carriers such that they too must act reasonably and in good faith to settle or pay UM claims. The Court reasoned that "*Nichols* places no limitations on an insurer's duty of good faith and fair dealing with its insured," and was not persuaded to distinguish UM coverage from other first-party insurance. *Id.* at 1403-1404.

Judge Currie agrees that UM carriers must exercise good faith once the insured sues the uninsured motorist. *See Wilkins v. State Farm Mut. Ins.*

---

[3] A state Supreme Court has cited and adopted *Jefferson. Sanford v. Liberty Mut. Ins. Co.,* 536 So.2d 941, 942 (Ala. 1988)*.*

6

*Co.,* C.A. # 3:06-334-CMC, 2008 W.L. 2690240 (D.S.C. July 1, 2008) at * 8 ("As the *Myers* line of cases suggests, the duty of good faith includes, in appropriate cases, a duty of make reasonable efforts to settle the claim through negotiation, at least after suit is filed against the underinsured or uninsured motorist.").[4]

Judge Wooten has also held a UM carrier to the *Nichols* standard. In *Collins,* Judge Wooten granted a UM carrier summary judgment, on the merits, only after holding that the carrier was obligated to act in good faith. *Collins v. Auto-Owners Ins. Co.,* 759 F.Supp.2d 728, 739 (D.S.C. 2010)(citing and applying *Nichols*). The Fourth Circuit affirmed after it too held the UM carrier to the *Nichols* standard. 438 Fed.Appx. 247, 249 (4th Cir. 2011).

Peerless nevertheless argues that UM carriers and their insureds are too adversarial for it to act in good faith. The Fourth Circuit squarely disagrees. In *Weese,* the Fourth Circuit correctly predicted that West Virginia would require UM carriers to treat their insureds fairly prior to a judgment in the UM action. *Weese v. Nationwide Ins. Co.,* 879 F.2d 115, 118-119 (4th Cir. 1989). In doing so, the court rejected the very argument that Peerless makes here: "Nationwide fails to recognize that all first party claims are

---

[4] *Myers* refers to *Myers v. State Farm Mut. Auto. Inc. Co.,* 950 F.Supp.2d 148 (D.S.C. 1997).

adversarial. The insurer wishes to minimize payment and the insured wishes to maximize it." *Id.* at 118. The Fourth Circuit then "illustrate[d] the fallacy" of the argument by citing a decision that imposed a duty of good faith on an insurer who claimed that its insured was an arsonist. *Id.*

The South Carolina Supreme Court has likewise applied *Nichols* and affirmed a verdict against an insurer for its bad faith refusal to pay a fire claim—even though the insurer concluded that its insured caused the fire. *Vanadore v. Nationwide Mut. Ins. Co.,* 289 S.C. 155, 345 S.E.2d 711 (1985).

You can't get much more adversarial than claiming arson. Yet South Carolina law still requires the insurer to treat its insured with good faith.

This should be even more true for UM carriers. Automobile insurers must cover losses from unknown motorists. S.C. Code Ann.§ 38-77-30(14) ("A motor vehicle is considered uninsured if the owner or operator is unknown."); § 38-77-150(A)(mandating UM coverage). Courts uniformly hold that such mandates mean that UM carriers owe their insureds an even greater duty of good faith and fair dealing than do other first-party insurers.[5]

None of this is new. Peerless has had decades to take *Jefferson* into

---

[5] *See, e.g., State Farm Mut. Auto. Inc. Co. v. Canady,* 475 S.E.2d 107, 114-115 (W.Va. 1996); *State Farm Mut. Auto. Ins. Co. v. Shrader*, 882 P.2d 813, 825 (Wyo.1994); *Sanford,* 536 So.2d at 942; *Tait v. Royal Ins. Co.,* 913 F.Supp. 621, 624-625 and n. 3 (D.Me. 1996)(citing decisions).

account when it decides which UM claims to contest and how long to contest them, and when it sets premiums for the statutorily-required coverage. So it is not unfair to require Peerless to treat Tucker fairly. It is unfair not to.

## II. Serving the John Doe action triggered the *Nichols* duty.

Peerless also wants this Court to be the first court to reject *Myers*, using "but see contra" to suggest that it is an isolated outlier. Motion to Dismiss, p. 7. In *Meyers,* Judge Blatt predicted that *Nichols* applies to underinsurance (UIM) carriers and is triggered at the latest when the insured sues the at-fault driver and serves the UIM carrier with process. *Myers,* 950 F.Supp. at 150. The court distinguished the *Lawson* decision that Peerless cites, because it involved a contractual claim and not a bad-faith tort action, and distinguished the *Williams* decision that Peerless cites because the insured in that case never sued the at-fault driver. *Id.* at 149-150.

The "but see contra" indication is unfortunate because the cases string cited fully embrace the *Myers* trigger. In *Potylicki*, the Fourth Circuit applied South Carolina law and noted: "In a case decided shortly after *Williams*, the state supreme court clarified that, where the insured had served the [UIM] insurer with pleadings, the insurer could be held liable despite the fact that the insured had not yet obtained a judgment 'in excess

9

of the at-fault driver's liability limits.'" *Potylicki v. Allstate Ins. Co.,* 386 Fed.Appx. 435, 438 (4th Cir. 2010)(citation omitted). The Fourth Circuit then cited *Halmon* and *Myers* approvingly. *Id.*

The *Halmon* decision, by Judge Duffy, examined *Myers* throughly and declined to cast doubt on it. *Halmon v. Am. Int'l Group, Inc. Ins. Co.,* 586 F.Supp.2d 401, 405-408 (D.S.C. 2007). Judge Duffy has since ruled that a UIM carrier must act in good faith where, as here, the carrier was served in the underlying action and undertook to defend the at-fault motorist. *Snyder v. State Farm Mut. Auto. Ins. Co.,* 586 F.Supp.2d 453, 457-458 (D.S.C. 2008). Judge Duffy then denied a motion to dismiss where the insured served the UIM carrier with process in the underlying action. *Hartstock v. American Auto. Ins. Co.,* 788 F.Supp.2d 447, 452 (D.S.C. 2011).

Judge Harwell has also applied the *Myers* trigger. In *Jordan,* the court granted a UIM carrier summary judgment, on the merits, only after holding that it had to act in good faith. *See Jordan v. Allstate Ins. Co.,* C.A. # 4:14-cv-03007-RBH, 2016 W.L. 3467080 (D.S.C. Aug. 16, 2016) at * 6 ("[O]nce a UIM insured commences a claim for liability against the allegedly at-fault driver, the UIM insurer has a duty to act in good faith towards the insured.").

Judge Norton has likewise granted a UIM carrier summary judgment, on the merits, only after holding that the carrier had to act in good faith.

*Stewart v. State Farm Fire and Cas. Co.,* C.A. # 2:11-cv-03020-DCN, 2013 WL 3206553 (D.S.C. June 24, 2013) at * 3-4 (applying *Nichols*).

Judge Currie agrees. Contrary to Peerless's reading, the *Wilkins* decision questioned whether a bad faith claim exists before the at-fault driver is ever sued. *Wilkins,* 2008 W.L. 2690240 at * 5 (stating that the question before the court concerned claimed bad faith "predating the insured's institution of an action against the uninsured motorist."). After the at-fault driver is sued, as here, the UM carrier owes the duty. "As the *Myers* line of cases suggests, the duty of good faith includes, in appropriate cases, a duty of make reasonable efforts to settle the claim through negotiation, at least after suit is filed against the underinsured or uninsured motorist." *Id.* at 7-8.

Lastly, Judge Herlong did not address *Myers* in *Crowe v. Vaughn,* C.A. # 8:08-3665-HMH, 2008 W.L. 5114956 (D.S.C. Dec. 2, 2008), apparently because the insured in the case never responded to the motion to dismiss. The court has since applied *Myers* and denied a UIM carrier's motion to dismiss even though the action against the at-fault motorist was still ongoing. *Auto-Owners Ins. Co. v. Woodland Mobile Home Park, LLC.,* C.A. # 6:15-910-HMH, 2015 W.L. 11027032 (D.S.C. July 28, 2015).

This summary shows that Peerless has no basis to say that "the Fourth Circuit and majority of district judges interpreting facts such as these before

the Court hold dismissal is appropriate." Motion to Dismiss, p. 9. Its citations and decisions it neglected to cite show the opposite in that Tucker did not sue Peerless until after Tucker made Peerless a party in the UM action, and then only after the jury returned a verdict in his favor. Complaint, ¶¶ 8, 15.

### III. Tucker plausibly states a *Nichols* claim.

As a fallback, Peerless argues that Tucker fails to state a claim under the heightened *Iqbal/Twombly* standards that did not apply when Tucker sued Peerless in the South Carolina Court of Common Pleas. If correct, this does not justify a dismissal but at most an order granting Tucker leave to amend.

But Peerless is not applying *Iqbal/Twombly* correctly. The standard does not require that factual allegations be stated in detail. It just requires facts be pleaded beyond unadorned labels, elements of claims, or bald legal conclusions. If the underlying facts are pleaded, the well-pleaded facts must be taken as true and construed in a light most favorable to the plaintiff. And a plausible but inconclusive inference from the pleaded facts survives a motion to dismiss. *Williams v. National Union Fire Ins. Co. of Pittsburgh, PA.,* 94 F.Supp.3d 719, 723-724 (D.S.C. 2015)(Hendricks, J.).

Tucker pleaded that Peerless raised S.C. Code Ann. § 38-77-170 in the UM action in bad faith. Complaint, ¶ 18. Putting meat on those bones,

12

Tucker alleges that Bernardo signed the affidavit that the statute requires and that the trial court twice rejected Peerless's view of the law. Complaint, ¶¶ 9-11. Beyond that, Tucker alleges that Peerless never responded to Tucker's settlement offers and never tendered its UM limits, either before or after the jury returned its multimillion dollar verdict against the unknown motorist. Complaint, ¶¶ 12-16. It did not tender its UM limits when the Court of Appeals affirmed over a year ago, and has still not tendered its UM limits despite the Supreme Court's denial of certiorari over a month ago.

The trial court and Court of Appeals decisions in the UM action detail the facts underlying these allegations.

Wilson tied the freightliner's unknown driver to Tucker's crash when Wilson testified that the block he saw on the flatbed "looked just like" the one that Tucker testified he hit and that the tow truck operator found near the scene. *Tucker,* 413 S.C. at 395, 776 S.E.2d at 125. Other evidence explained how the unknown driver was negligent in only using a single, inadequate strap across the top of the block. *Id.* at 395, 405-406, 776 S.E.2d at 125, 130.

The tow truck operator added that the skid marks on the road left him with no doubt that Tucker hit the block, while the skid marks, impact marks, and damage to the truck confirmed that Tucker had in fact hit the block. *Id.* at 394-395, 776 S.E.2d at 124-125.

13

And the block did not get there by itself. As the SCDOT engineer opined, one "could only assume" that a vehicle was involved because the block weighed 650 pounds and was found in an area where pedestrians are not allowed. *Id.* at 395-396, 406, 776 S.E.2d at 125, 130.

Beyond this liability evidence, Tucker's undisputed injuries from the crash far exceed his UM coverages. The medical bills alone totaled $325,000. Motion to Dismiss, Ex. A at 7. He also continues to suffer substantial pain, loss of enjoyment of life, and a permanent impairment and disfigurement. Motion to Dismiss, Ex. A at 7. As Peerless told the jury, "He [Tucker] suffered grievous, grievous injury . . . I mean, even in the Bible they don't talk about the kinds of injuries Mr. Tucker suffered." Ex. C.

This background distinguishes the summary-judgment decisions that Peerless cites. The summary-judgment records developed in those cases show how insurers act when they treat their insureds fairly.

The UM carrier in *Collins* offered the insured $100,000 even though it had good reason to question the at-fault driver's liability and its insured's injuries. The carrier's doubts were confirmed when the jury returned a defense verdict for the at-fault driver. *Collins,* 759 F.Supp.2d at 740-742. The UM carrier in *Wilkins* offered 100% of its policy limits as soon as its insured sued the at-fault driver. *Wilkins,* 2008 WL 2690240 at * 7. And the UIM

14

carriers in *Synder* and *Stewart* paid 100% of their policy limits as soon as the jury returned an excess verdict against the at-fault driver. *Synder*, 586 F.Supp.2d at 456; *Stewart*, 2013 WL 3206533 at * 2.

In contrast, Peerless never offered Tucker a dime during the years he was fighting for his benefits, either after Tucker sued the at-fault driver, after the trial judge rejected its view of S.C. Code Ann. § 38-77-170(2), or after the jury returned its multimillion dollar verdict. It never even offered Tucker a dime after the Court of Appeals affirmed his judgment. And Tucker is still waiting for his UM benefits even now that the Supreme Court denied certiorari.

And this goes beyond just refusing to pay. Peerless has also never offered a reasonable, good-faith basis to question Tucker's claim or continue the fight. It has never given anyone reason to believe that the block that Wilson saw was just a coincidence or explained how the 650 pound block got where it was without a vehicle. And it admits the severity of Tucker's "grievous, grievous injury" that "even in the Bible they don't talk about." Ex. C.

Peerless seems to have always stood on its mistaken view that it alone gets to judge itself. This is not the law. In South Carolina, insurers do not get to judge themselves. *See Vanadore,* 289 S.C. at 158-159, 345 S.E.2d at 713-714 (affirming a verdict against a fire insurer for its bad faith refusal to pay

15

despite its internal conclusion that its insured was an arsonist).

### IV. Tucker is not limited to the $100,000 policy limit.

Lastly, Peerless's desire to cap damages at the $100,000 UM policy limit ignores the prayer for prejudgment interest. Complaint, p. 7. The contract claim entitles Tucker to prejudgment interest back from 2010 when Tucker first demanded his UM benefits. The $100,000 sum claimed being fixed and due, it has drawn 8.75% per annum in prejudgment interest ever since. S.C. Code Ann. § 34-31-20(A). Peerless's decision to dispute the claim does not exempt it from having to pay. *Butler Contracting, Inc. v. Court Street, LLC,* 369 S.C. 121, 133, 631 S.E.2d 252, 259 (2006).

The tort action for bad faith is also not capped. In *Nichols* claims, "Actual damages are not limited by the contract." *Nichols,* 279 S.C. at 340, 306 S.E.2d at 619. All consequential damages are recoverable, including damages for causally-related emotional distress. *Jordan,* 2016 W.L. 3467080 at * 8 (citing cases). Punitive damages and attorney fees are also available. *Nichols,* 279 S.C. at 340, 306 S.E.2d at 619; S.C. Code Ann. § 38-59-40.

### Conclusion

Tucker triggered Peerless's duty of good faith when he sued the at-fault driver over six years ago. The trial judge in the action rejected Peerless's

view of § 38-77-170 over five years ago. The jury returned a multimillion dollar verdict against the at-fault driver over three and a half years ago. And the Court of Appeals affirmed that judgment over a year ago.

Throughout these years, Tucker has never been able to discern any reasonable, good-faith basis for Peerless to contest his claim or continue the fight. If Peerless has one, let it say so in a motion for summary judgment. But let us not say that UM carriers can act in bad faith. Let us not say that the block Wilson saw was just a coincidence, or that the 650 pound block wandered into I-95 South by itself. And let us not say that Tucker suffered less than the "grievous, grievous" injuries that Peerless admitted he suffered.

The motion to dismiss should be denied.

Florence, South Carolina

December 1, 2016

s/ William P. Hatfield
Attorney for the Plaintiff
USDC # 1777

HATFIELD TEMPLE, LLP
170 Courthouse Square
P.O. Box 1770
Florence, SC 29503-1770
(843) 662-5000
wphatfield@htlawsc.com