IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| Bobby Lee Tucker, Sr., | ) Civil Action No.: 4:13-01809-BHH |
| Plaintiff, | ) |
| vs. | ) **ORDER AND OPINION** |
| Peerless Insurance Company, | ) |
| Defendant. | ) |

This matter is before the Court on Defendant's Amended Motion to Dismiss, (ECF No. 23), and Plaintiff's Motion for Leave to File Amended and Supplemental Complaint, (ECF No. 26). For the reasons set forth below, the Defendant's motion is DENIED and Plaintiff's motion is GRANTED.

## BACKGROUND AND PROCEDURAL HISTORY

On the evening of April 30, 2010, Plaintiff was involved in a car accident in which he struck a 650 pound metal block lying in the outside lane of Interstate 95, causing Plaintiff to lose control and strike the overpass. A third party, Anthony Bernardo ("Bernardo"), witnessed the accident and subsequently signed an affidavit attesting to the truth and facts of the accident. Upon notification of the incident, South Carolina Highway Patrol conducted an investigation. Plaintiff learned that on the day of the crash, a witness observed a freightliner that contained a block on its flatbed, leaving a truck stop. At the time, the witness thought the block "could be a problem" because it only had a single strap across the top of the block. (ECF No. 26-1 ¶ 5.)

At the time of the crash, Plaintiff was driving his employer's car. Plaintiff had $100,000 in individual uninsured motorist ("UM") coverage from Defendant Peerless Insurance Company ("Defendant") and $100,000 in UM coverage from his employer's carrier, Canal Insurance Company ("Canal").[1] On May 14, 2010, Plaintiff filed a "John Doe" action, believing John Doe to be the driver of the freightliner seen on the day of the accident. Plaintiff served the two UM carriers with process.[2] Defendant and Canal answered on John Doe's behalf. After the parties exchanged written discovery and took depositions, the UM carriers moved for summary judgment on whether the Bernardo affidavit satisfied S.C. Code Ann. § 38-77-170(2). The trial court denied the motions on June 15, 2011, finding that Plaintiff had "complied with all requirements set forth by the legislature to bring this action under the uninsured motorist provision." (ECF No. 24-1 at 5.)

By email dated June 20, 2011, Plaintiff's trial counsel offered to settle the case if both carriers tendered the policy limits under each applicable policy. Plaintiff confirmed this offer on June 27, 2011, and stated the offer remained open until July 1, 2011. Defendant did not respond to the settlement offer and, instead, moved for reconsideration of its summary judgment motion on June 29, 2011, which the trial court denied on August 30, 2011. (ECF No. 24-2.) Canal, however, engaged in settlement talks and, after some negotiation, tendered the policy limits of $100,000 dollars by letter

---

[1] Plaintiff's policy with Defendant was an excess policy because the vehicle being operated by Plaintiff on the night of the accident was owned by his employer and insured by Canal.
[2] The state court docket lists the two insurance carriers as Canal Insurance Company and Montgomery Insurance Company. Although the parties have not clarified, their briefs indicate that Montgomery Insurance Company and Defendant Peerless Insurance Company are the same entity for the purposes of this matter.

2

dated August 29, 2011. The case proceeded to trial with only Defendant defending John Doe.

On April 15, 2013, the jury awarded Plaintiff $2,500,000 in actual damages and $2,500,000 in punitive damages. On May 28, 2013, Plaintiff filed this action against Defendant for bad faith and breach of contract. This action was stayed during Defendant's post-trial motion and appeals in the underlying state action. On December 16, 2013, the trial court reduced the punitive damages award, affirmed the actual damages award, and entered judgment for Plaintiff in the amount of $3,000,000. The South Carolina Court of Appeals affirmed the trial courts' decision, and the South Carolina Supreme Court denied certiorari on October 20, 2016. In December 2016, Defendant tendered to Plaintiff the $100,000 policy limit and post-judgment interest. (ECF No. 26-1 ¶ 35.)

This Court lifted the stay on October 26, 2016. Defendant filed an Amended Motion to Dismiss in this action on November 16, 2016, to which Plaintiff responded on December 1, 2016. On December 27, 2016, Plaintiff filed a Motion for Leave to File an Amended and Supplemental Complaint. Defendant opposed the motion on January 5, 2017. Both motions are ripe and ready for the Court's review.

## STANDARD OF REVIEW

### A.     Motion to Amend

Rule 15 of the Federal Rules of Civil Procedure allows a party to amend the party's pleading once as a matter of course at any time before a responsive pleading is served. Fed. R. Civ. P. 15(a). Otherwise, a party may amend the party's pleading only by

leave of court or by written consent of the adverse party. *Id.* Leave to amend a pleading shall be freely given "when justice so requires." *Id.* Thus, "leave to amend a pleading should be denied only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile." *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 509 (4th Cir.1986).

### B.     Motion to Dismiss

A plaintiff's complaint should set forth "a short and plain statement . . . showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007)). To show that the plaintiff is "entitled to relief," the complaint must provide "more than labels and conclusions," and "a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 555. In considering a motion to dismiss under Rule 12(b)(6), the Court "accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff . . . ." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.,* 591 F.3d 250, 255 (4th Cir. 2009).

To survive a Rule 12(b)(6) motion to dismiss, a complaint must state "a plausible claim for relief." *Iqbal*, 556 U.S. at 679. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of

entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). Stated differently, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* (quoting Fed. R. Civ. P. 8(a)). Still, Rule 12(b)(6) "does not countenance . . . dismissals based on a judge's disbelief of a complaint's factual allegations." *Colon Health Centers of Am., LLC v. Hazel*, 733 F.3d 535, 545 (4th Cir. 2013) (quoting *Neitzke v. Williams,* 490 U.S. 319, 327 (1989)). "A plausible but inconclusive inference from pleaded facts will survive a motion to dismiss . . . ." *Sepulveda-Villarini v. Dep't of Educ. of Puerto Rico*, 628 F.3d 25, 30 (1st Cir. 2010) (Souter, J.).

## DISCUSSION

As an initial matter, the Court grants Plaintiff's motion to amend the complaint (ECF No. 26). There is no evidence that the proposed amendment would be prejudicial to Defendant, nor has Defendant demonstrated any bad faith on the part of Plaintiff in moving to amend the complaint. *See Johnson*, 785 F.2d at 509. Further, as discussed below, the amendment would not be futile. The proposed amendment establishes causes of action for breach of contract and bad faith.[3]

Turning to Defendant's amended motion to dismiss (ECF No. 23), Defendant makes similar arguments for dismissal both in its motion and in its opposition to Plaintiff's

---

[3] In a footnote, Defendant asserts that the Court should strike certain paragraphs of the amended complaint relating to settlement negotiations. (ECF No. 27 at 3.) In support, it cites a Maryland case stating that "any reference by Plaintiffs to communications with Defendant regarding settlement as 'evidence' of a genuine dispute of material fact would be quite improper, and inadmissible." *Osunde v. Lewis*, 281 F.R.D. 250, 259 (D. Md. 2012). The Maryland case has no application here. It relates to the summary judgment standard, which is not currently before this Court.

motion to amend the complaint. The Court has carefully considered all of Defendant's arguments and finds none to be persuasive. Defendant first argues that South Carolina law has not expressly authorized a bad faith action against an UM carrier by its insured and South Carolina courts would therefore not recognize such an action here. (ECF Nos. 23 at 4; 27 at 5.)

The South Carolina Supreme Court has held that "if an insured can demonstrate bad faith or unreasonable action by the insurer in processing a claim under their mutually binding insurance contract, he can recover consequential damages in a tort action." *Nichols v. State Farm Mut. Auto. Ins. Co.*, 306 S.E.2d 616, 619 (S.C. 1983). Furthermore, a bad faith claim may exist even in the absence of any violation of an insurance contract provision, as "the benefits due an insured are not limited solely by those expressly set out in the contract." *Tadlock Painting Co. v. Maryland Cas. Co.*, 473 S.E.2d 52, 55 (S.C. 1996).

While *Nichols* recognizes a first-party claim by the insured for bad faith in processing claims for benefits, South Carolina courts have repeatedly denied actions for bad faith refusal to pay claims to *third parties* who are not named insureds. *See, e.g., Carter v. American Mut. Fire Ins. Co.*, 307 S.E.2d 227 (S.C. 1983); *Cook v. Mack's Transfer & Storage*, 352 S.E.2d 296 (S.C. Ct. App. 1986); *Swinton v. Chubb & Son, Inc.*, 320 S.E.2d 495 (S.C. Ct. App. 1984); *but see Ateyeh v. Volkswagen of Florence, Inc.*, 341 S.E.2d 378 (S.C. 1986) (applying a narrow exception to this rule for a 'third-party' spouse under the necessaries doctrine). Here, Defendant argues that South Carolina courts would similarly deny Plaintiff's action as an attempt by a third party to assert a bad

faith claim against an insurer. Defendant argues that UM coverage would be considered third party insurance "because from the outset of the lawsuit/claim, the parties are adverse." (ECF No. 23 at 5.)

While Defendant is correct that the South Carolina Supreme Court has not ruled on the viability of a bad faith claim in the context of UM coverage, a South Carolina district court has expressly found that should the issue arise in state court, the Supreme Court would find such an action proper. In *Jefferson v. Allstate Ins. Co.*, Judge G. Ross Anderson denied a motion to dismiss a bad faith cause of action against the UM carrier. 673 F. Supp. 1401, 1403 (D.S.C. 1987). After noting *Nichols'* recognition of a first-party bad faith claim, Judge Anderson found that there was nothing in *Nichols* to suggest the South Carolina Supreme Court would exclude a bad faith cause of action under the uninsured motorist provisions of an automobile insurance policy. *Id.* In support, he noted that "*Nichols* places no limitation on an insurer's duty of good faith and fair dealing with its insured." *Id.*

In so finding, Judge Anderson expressly rejected the argument advanced by Defendant here, stating, "the fact that an insurance company and its insured hold adverse positions on the issue of liability 'does not materially distinguish uninsured motorist insurance from first party insurance with respect to the existence of a duty on the part of the insurer to handle the insured's claim fairly and in good faith.'" *Id.* at 1404 (quoting *Craft v. Econ. Fire & Cas. Co.*, 572 F.2d 565, 569 (7th Cir. 1978)). Defendant attempts to differentiate *Craft*, the Seventh Circuit opinion quoted here by Judge Anderson, by noting that the *Craft* court found there was no fiduciary duty in an

7

uninsured motorist situation. 572 F.2d at 569. In *Craft*, the court indeed found that a fiduciary duty does not exist in an uninsured motorist situation because the insurer does not control the insured's side of the litigation. *Id.* However, the *Craft* court carefully explained that a lack of fiduciary duty did not render "the insurer . . . completely free of any obligation of good faith and fair dealing to its insured, since the latter duty is based on the reasonable expectations of the insured and the unequal bargaining positions of the contractants, rather than the insurance company's 'control' of the litigation." *Id.* Thus, *Craft* supports finding a bad faith cause of action in UM coverage cases, and was properly relied on in *Jefferson*.

Importantly, no South Carolina court has expressly disputed the reasoning laid out in *Jefferson*. Indeed, at least two other courts in this district have commented approvingly on the decision. *See Collins v. Auto-Owners Ins. Co.*, 759 F. Supp. 2d 728, 733 (D.S.C. 2010), *aff'd*, 438 F. App'x 247 (4th Cir. 2011) (considering defendant's motion for summary judgment on a bad faith UM claim and noting that the duty of good faith and fair dealing to insureds "has been recognized in the context of uninsured motorist claims") (citing *Jefferson*, 673 F. Supp. at 1403); *Pollock v. Goodwin*, No. 3:07-3983-CMC, 2008 WL 216381, at *4 (D.S.C. Jan. 23, 2008) (noting that *Jefferson* "predicted that the South Carolina Supreme Court would recognize that an insurer's duty of good faith extends to uninsured . . . motorist coverage"). In short, the Court sees no reason to stray from *Jefferson's* reasoning and finds Defendant's arguments on the issue unpersuasive.

8

Defendant next argues that even if a bad faith cause of action can exist in UM coverage cases, the allegations made in the Complaint do not support this cause of action. (ECF Nos. 23 at 8; 27 at 9.) Specifically, Defendant appears to argue that its alleged duty to act in good faith and fair dealing was not triggered until after the judgment was obtained against the at-fault driver and affirmed in state court, and, therefore, Plaintiff's allegations as to Defendant's actions prior to that point should be dismissed.[4]

This argument, however, has been expressly rejected. In *Myers v. State Farm Mut. Auto. Ins. Co.*, Judge Blatt considered whether a bad faith claim in the underinsured motorist ("UIM") context was prematurely filed. 950 F. Supp. 148, 149 (D.S.C. 1997). The insurer defendant argued, as Defendant does here, that an insured is required to obtain a judgment against an at-fault driver before the insured's carrier's duty arises to exercise good faith and deal fairly with the insured regarding underinsured[5] benefits. *Id.*

Judge Blatt rejected this argument and found that South Carolina law established, at most, that an insurer's "duty to act in good faith regarding underinsured benefits arises after the insured brings suit against the at-fault driver and serves the carrier with process." *Id.* at 150. In coming to this conclusion, Judge Blatt considered the same case law relied on by Defendant here: *Williams v. Selective Ins. Co.*, 446 S.E.2d 402 (S.C. 1994), and *Lawson v. Porter*, 180 S.E.2d 643 (S.C. 1971). First, he noted that *Williams* involved an action against an insurer for breach of contract and bad faith refusal to pay UIM benefits where the plaintiff failed to pursue an action against the at-fault driver.

---

[4] In the Amended Complaint, Plaintiff alleges that Defendant breached the implied covenant of good faith and fair dealing by: (1) failing to promptly pay Plaintiff the UM benefits due; (2) failing to properly investigate or evaluate Plaintiff's UM claim; (3) failing to engage in settlement negotiations; (4) assessing Plaintiff's UM claim as having zero value; (5) advocating various untenable positions in the underlying action; and (6) continuing to contest Plaintiff's claim in the underlying action even after Plaintiff was awarded a jury verdict that was affirmed by the Court of Appeals. (ECF No. 26-1 ¶ 38.)

[5] Or, as Defendant argues, uninsured benefits.

*Meyers,* 950 F. Supp. at 149–50. The *Williams* court found summary judgment proper because the plaintiff did not comply with the state statute requiring that the insured file an action against the at-fault driver and serve the insurance carrier with process in order to maintain a claim for UIM benefits. 446 S.E.2d at 404 (citing S.C. Code Ann. § 38-77-160). As Judge Blatt correctly noted, *Williams* did not address the issue of when the insured may bring a suit against his own carrier for bad faith after bringing suit against the tortfeasor.

Judge Blatt next distinguished *Lawson*, finding that the case only required that a judgment first be obtained against the at-fault driver before an insured can bring an action *ex contractu* against the insurance carrier for UM benefits. *Myers*, 950 F. Supp. at 150 (citing *Lawson*, 180 S.E.2d at 644). Because the plaintiff in *Myers* was pursuing a bad faith action, *Lawson* was inapplicable. *Id.* Judge Blatt found support for his findings in case law from other jurisdictions that considered and rejected the "prematurity" argument advanced by the defendant. He highlighted these courts' findings that the duty of good faith exists when investigating and processing an underinsurance claim and that, "in cases of liability where it is clear that damages have been suffered by the insured that are greatly in excess of the tortfeasors' policy limits, the underinsured carrier may have a duty to make a settlement offer prior to its insured obtaining a judgment against, or exhausting the policy limits of, the tortfeasor." *Id.* at 151.

Other courts in this district have echoed *Myers'* holding, finding that at the least, an insurer has a duty to act in good faith towards the insured once the insured files a claim against the at-fault driver. *See Auto-owners Ins. Co. v. Woodland Mobile Home*

*Park, LLC*, No. 6:15-910-HMH, 2015 WL 11027032, at *2 (D.S.C. July 28, 2015) (following *Myers* and finding bad faith claim not subject to dismissal where insured had initiated suit against the at-fault driver, even though underlying suit was ongoing)[6]; *Hartsock v. Am. Auto. Ins. Co.*, 788 F. Supp. 2d 447, 452 (D.S.C. 2011) (citing *Myers* and stating, "Since Plaintiff had initiated his action against the at-fault driver and served all relevant documents from that action upon [the insurer] before initiating this action, the Court finds that this action is not premature and, therefore, denies Defendant's motion to dismiss"); *Snyder v. State Farm Mut. Auto. Ins. Co.*, 586 F. Supp. 2d 453, 458 (D.S.C. 2008) (citing *Myers*, stating, "once a UIM insured commences a claim for liability against the allegedly at-fault driver, the UIM insurer has a duty to act in good faith towards the insured"); *Wilkins v. State Farm Mut. Ins. Co.*, No. C/A 3:06-334-CMC, 2008 WL 2690240, at *8 (D.S.C. July 1, 2008) ("As the *Myers* line of cases suggests, the duty of good faith includes, in appropriate cases, a duty to make reasonable efforts to settle the claim through negotiation, at least after suit is filed against the underinsured or uninsured motorist."); *Halmon v. Am. Int'l Group, Inc. Ins. Co.*, 586 F. Supp. 2d 401, 408 (D.S.C. 2007) (following *Myers* and dismissing plaintiff's bad faith claim as premature, finding that the insurer's duty of good faith had not yet arisen when the bad faith claim was filed because the insurer had not yet been properly served in the underlying action).

In light of the foregoing case law, the Court rejects Defendant's assertions that Plaintiff's bad faith claim should be dismissed as premature. To the extent Defendant

---

[6] Defendant cites *Crowe v. Vaughn*, 2008 WL 5114956 (D.S.C. Dec. 2, 2008), an earlier opinion issued by Judge Herlong, in support of its prematurity argument. In *Crowe,* Judge Herlong granted an unopposed motion to dismiss a bad faith claim for UIM benefits, finding the claim improper because the plaintiff had not yet "obtained a judgment against the alleged tortfeasors." The Court finds Judge Herlong's more recent opinion, *Auto-owners Ins. Co. v. Woodland Mobile Home Park, LLC,* more persuasive, as it was based on a briefed motion and discusses the case law on this issue. 2015 WL 11027032, *2.

11

argues that its conduct was reasonable, such an argument is not appropriate at this stage of the case.

Defendant next argues that Plaintiff is not entitled to damages beyond the policy limits. (ECF Nos. 23 at 9; 27 at 10.) It asserts that the *Tyger River* doctrine is inapplicable to the context of UM coverage and Plaintiff therefore cannot claim the excess judgment in the underlying action as damages. (ECF No. 27 at 10.) The *Tyger River* doctrine refers to the South Carolina Supreme Court case which held that an insured may be entitled to an excess judgment if it was caused by the insurer's bad faith refusal to settle or defend a case. *Tyger River Pine Co. v. Md. Cas. Co.*, 170 S.E. 346, 347 (S.C. 1933). According to Defendant, *Tyger River* only applies where the insurer assumes the defense of the insured and the insured may potentially be exposed to liability above and beyond the policy limits. (ECF No. 27 at 10.) Defendant relies on *Snyder* for support of this proposition. In *Synder*, the plaintiff alleged a bad faith claim against his UIM insurance carrier for both refusal to settle and refusal to pay benefits. 586 F. Supp. 2d at 458. In addressing this claim, the *Snyder* court found that "[t]he *Myers* court stopped well short of imposing upon first-party UIM insurers a duty to settle similar to the duty imposed upon liability insurers by the South Carolina Supreme Court in *Tyger River*." *Id.* at 459. However, the court believed there could be a duty to settle, as outlined in *Myers*, where "it was clear that the insured suffered damages greatly in excess of the liability limits of the at-fault party." *Id.* (internal quotations omitted). The court ultimately granted summary judgment on the bad faith claim, finding that the plaintiff failed to

establish an issue of material fact on the issue of whether the insurance carrier acted in bad faith. *Id.* at 461.

Here, at the dismissal stage, the Court draws no conclusions as to the reasonableness of Defendant's conduct as alleged by Plaintiff. While the application of *Tyger River* to these facts is not entirely clear, Defendant has not pointed to any authority that warrants dismissing Plaintiff's bad faith claim on these grounds. Such a dispute is better addressed at the summary judgment stage.

Defendant also argues that the excess verdict cannot form the basis of damages for Plaintiff's bad faith claim. (ECF No. 27 at 12.) Specifically, it argues that "[s]imply having to try a case to verdict where there is a debate over the value of the case cannot constitute the factual basis for a bad faith lawsuit." (*Id.* at 17.) In support, Defendant cites *Snyder* and *Collins*. As explained above, in *Snyder*, the court found that the insurer had a reasonable ground for contesting the plaintiff's claim for UIM coverage, and, therefore, granted summary judgment on plaintiff's bad faith claim. 586 F. Supp. 2d at 461. Defendant seems to rely on *Snyder* for the proposition that a failure to settle can never support a bad faith claim. However, as explained above, *Snyder* does not support that assertion. In *Collins*, the court similarly found that the insurer had a reasonable ground for contesting the plaintiff's claim for coverage and found summary judgment proper on the plaintiff's bad faith claim. 759 F. Supp. 2d at 742. Neither of these cases support the assertion that a bad faith claim cannot, under any circumstances, be based on an insurer's failure to settle a claim for coverage. Rather, they demonstrate that a bad faith claim fails as a matter of law where the insurer's actions were reasonable. Here, the

Court cannot make such a finding at this stage of the litigation. Thus, Defendant's assertions that its conduct, as alleged in the Complaint, was reasonable are premature. There is no basis, at this stage, to find that Defendant's conduct was reasonable as a matter of law.

Finally, Defendant argues that Plaintiff's breach of contract claim fails to establish a breach of any term in the policy and any resulting damages. (ECF Nos. 23 at 11; 27 at 12.) The amended complaint alleges that Defendant breached the insurance policy by failing to pay the policy limits at the time demanded, and, instead, litigating the claim through Plaintiff's trial against John Doe. Defendant asserts that this allegation cannot support a breach of contract claim because South Carolina courts have held that "recovery under the uninsured endorsement is subject to the condition that the insured establish legal liability on the part of the uninsured motorist." (ECF No. 27 at 15 (quoting *Collins*, 759 F. Supp. 2d at 736). In support, Defendant cites *Collins*, a UM case where the court granted summary judgment against plaintiff's breach of contract claim. 759 F. Supp. 2d at 742. *Collins*, however, is inapposite because in that case the court found the insurer owed nothing under the insurance policy given that the jury in the underlying action returned a verdict in favor of the uninsured motorist. *Id.* at 730. Here, Plaintiff obtained a judgment in his favor in the underlying action, and Defendant refused to tender the policy limits until six years after Plaintiff originally demanded payment.

To the extent Defendant argues that Plaintiff cannot establish damages under the breach of contract claim, Plaintiff has pled prejudgment interest on the policy limit from the time it was first demanded. While Defendant argues that South Carolina does not

allow for the recovery of prejudgment interest in a UM case (ECF No. 27 at 19), the Court finds prejudgment interest potentially recoverable in this type of claim.

As a general rule, prejudgment interest is not recoverable on an unliquidated claim in the absence of agreement or statute. *Builders Transp., Inc. v. S.C. Prop. & Cas. Ins. Guar. Ass'n*, 415 S.E.2d 419, 424 (S.C. Ct. App. 1992). "The law allows prejudgment interest on obligations to pay money from the time when, either by agreement of the parties or operation of law, the payment is demandable, if the sum is certain or capable of being reduced to certainty." *Babb v. Rothrock*, 426 S.E.2d 789, 791 (S.C. 1993); *see Builders Transp., Inc.*, 415 S.E.2d at 424 ("A claim is liquidated if the sum claimed is certain or capable of being reduced to a certainty."). "The proper test for determining whether prejudgment interest may be awarded is whether or not the measure of recovery, not necessarily the amount of damages, is fixed by conditions existing at the time the claim arose." *Babb*, 426 S.E.2d at 791. A claim will not be considered unliquidated for purposes of prejudgment interest solely due to a dispute as to the sum due. *Id.* A damages dispute hinging on uncertainty of contractual terms renders the sum due unascertainable. *Vaughn Dev., Inc. v. Westvaco Dev. Corp.*, 642 S.E.2d 757, 759–60 (S.C. Ct. App. 2007).

Section 34-31-20(A) of the South Carolina Code of Laws provides the statutory basis for prejudgment interest. This section states: "In all cases of accounts stated and in all cases wherein any sum or sums of money shall be ascertained and, being due, shall draw interest according to law, the legal interest shall be at the rate of eight and three-fourths percent per annum." S.C. Code Ann. § 34-31-20(A).

Here, the insurance policy's UM coverage does not specifically provide for prejudgment interest[7] and the UM statute makes no mention of the right to recover prejudgment interest. Thus, prejudgment interest may only be awarded if, at the time the policy limit was demanded by Plaintiff, the claim was liquidated or a sum capable of being reduced to certainty. Plaintiff acknowledges that the insurance policy does not provide for prejudgment interest, but asserts that prejudgment interest is properly pled because the "$100,000 sum claim [was] fixed and due" at the time it was demanded. Plaintiff quotes *Varnadore v. Nationwide Mutual Insurance Co.*, 345 S.E.2d 711, 715 (S.C. 1986), for the proposition that "[a]bsent an express exclusion, insurers who contest their insureds' claims unsuccessfully are liable for interest 'from the date of the loss.'" (ECF No. 28 at 8–9.)

The Court agrees with Plaintiff that the policy limit was a sum certain at the time it was originally demanded by Plaintiff. Accordingly, the Court finds prejudgment interest is potentially recoverable should Plaintiff prove successful on his breach of contract claim. *See Edens v. S.C. Farm Bureau Mut. Ins. Co.*, 343 S.E.2d 49, 50 (S.C. Ct. App. 1986) ("[T]he allowance of prejudgment interest is a matter of discretion.").[8] Plaintiff's breach of contract claim therefore does not fail for lack of damages.

---

[7] Under liability coverage, the policy provides: "We will pay damages for 'bodily injury' or 'property damage' for which any 'insured' becomes legally responsible because of an auto accident. Damages include prejudgment interest awarded against the 'insured'. (ECF No. 27-1 at 15.) However, no mention of prejudgment interest is made under the uninsured motorists coverage section. (*Id.* at 18–20.)

[8] Defendant's arguments to the contrary are without merit. Plaintiff did not need to plead recovery for prejudgment interest in the John Doe action because this claim is asserted against Defendant, not the at-fault driver, and arises out of Defendant's delayed payment of the policy limits. Defendant offers no South Carolina case law to dissuade the Court from this finding.

## CONCLUSION

For the foregoing reasons, it is hereby ORDERED that Defendant's amended motion to dismiss (ECF No. 23) is DENIED and Plaintiff's motion to amend the complaint (ECF No. 26) is GRANTED.

**IT IS SO ORDERED.**

/s/Bruce Howe Hendricks
United States District Judge

Greenville, South Carolina
March 3, 2017